APPEAL OF GEORGE W. BURKITT ESTATE.

Docket No. 2038. Submitted November 1, 1925. Decided April 3, 1926.

Where the one-half interest of the wife in community property descended to her children, who conveyed it to the husband of the decedent for the purpose of facilitating the administration of the estate, *held*, that property identified as forming part of the wife's estate, and the proceeds of so much as had been realized upon, was no part of the estate of the husband, who died within a year after the death of the wife.

*James J. O'Byrne, Esq.*, for the taxpayer.
*J. C. Swayze, Esq.*, for the Commissioner.

Before GRAUPNER and PHILLIPS.

FINDINGS OF FACT.

1. George W. Burkitt, Sr., the decedent, died July 14, 1923.. His wife, Mary E. Burkitt, died July 4, 1922. Both were residents of Texas. An estate-tax return was filed on behalf of the estate of Mary E. Burkitt and the tax was paid.

2. Several years prior to his death the decedent had retired from active business and was engaged in handling the various properties that he had accumulated, selling land that he had bought for timber, cutting off the timber, and selling the cut-over lands. Much of this was sold for part cash and part notes.

3. The estate of Mary E. Burkitt consisted almost entirely of a one-half interest in the community property held by herself and her husband at her death. At the time of her death, the community property consisted of 54 separate pieces of real estate; 10 separate items of stocks and bonds; over 500 notes receivable owing by 123 persons; and undivided interests in 25 other pieces of real estate in which the community had a joint ownership. The gross estate of Mary E. Burkitt, as determined by the Commissioner, was $352,-401.52, which, after legal deductions, including the $50,000 exemption, left a net taxable estate of $295,948.40.

4. Upon the death of Mary E. Burkitt, intestate, her estate, including her one-half interest in the community property, descended, under the law of Texas, to her two children, George W. Burkitt, Jr., and Elizabeth B. Crane.

5. Three or four days after the death of Mrs. Burkitt, her husband, George W. Burkitt, Sr., consulted his attorney with reference to the simplest and easiest way to administer his wife's estate. The attorney suggested that the easiest, and most convenient, and least expensive way, a way that would save administration and other legal procedure, would be for the children, George W. Burkitt, Jr., and Elizabeth B. Crane, to deed the property to Burkitt, Sr.

6. For about a year previous to his mother's death, George W. Burkitt, Jr., had been ill, and at the time of her death he was at a sanitarium at Wauwatosa, Wis. Under date of August 1, 1922, he received a letter from his father, the material portions of which were as follows:

Inclosed find a deed for your signature that is meant to avoid unnecessary expense in handling your mother's interest in the property. She left no will, and to administrate on the property would entail an unnecessary expense and a long drawn out series of red tape proceedings.

Sign and acknowledge the deed and return to me at your earliest convenience.

7. The deed referred to in the above letter, and inclosed therewith, which was executed by George W. Burkitt, Jr., was a warranty deed, and purported to convey to George W. Burkitt, Sr., all the interest of George W. Burkitt, Jr., in the property which had come to him from his mother, Mary E. Burkitt, deceased. The consideration expressed in the deed is $1 and "natural love and affection." George W. Burkitt, Jr., did not return to Houston until about two months after the execution of the deed.

8. The value of the share of George W. Burkitt, Jr., in his mother's estate was in excess of $150,000. His total net worth, aside from his interest in his mother's property at the time of the signing of the

deed above referred to, was not over $6,000. He received nothing of value from his father for transferring to him his interest in his mother's estate.

9. Elizabeth B. Crane, the other heir of Mary E. Burkitt, on the 31st day of July, 1922, executed a warranty deed to her father, purporting to convey to him her interest in the estate of her deceased mother. This deed also recited a consideration of $1 and " natural love and affection."

10. Mrs. Crane was requested by her father to execute this deed, and he stated that he desired her to do so in order to permit him a greater facility in handling his wife's estate and to relieve his daughter, Mrs. Crane, of any trouble or worry, to keep down the expenses of administration as much as possible, and to eliminate any red tape that might have to be gone through with in the administration of it.

11. The value of Mrs. Crane's interest in her mother's estate at the time of the execution of the deed was in excess of $150,000. Her net worth at that time, aside from her interest in her mother's estate, was not more than $5,000.

12. At the time of these transfers, George W. Burkitt, Sr., was 72 years of age, active, and in good health. He died about a year afterwards, leaving his entire estate, with the exception of one or two small bequests, to his two children, share and share alike.

13. In conversations with his attorney, his daughter, and with his bookkeeper and secretary, he spoke of the property which his children had deeded to him as their half of the property and the remainder of the property as his.

14. George W. Burkitt, Sr., managed the property formerly held in community, including Mrs. Burkitt's interest which the children conveyed to him, up to the time of his death, July 14, 1923.

15. In the return filed on behalf of the estate of George W. Burkitt, Sr., the value of the property so acquired, or acquired through the conversion thereof, was included in his gross estate, and deduction was claimed under section 403 (a) (2) of the Revenue Act of 1921 in an amount approximately equal to the value of such property, as representing property previously taxed in the prior decedent's estate. The return was so made acting upon advice of a deputy collector of internal revenue, which advice was confirmed by an internal revenue agent.

16. In computing the deficiency of $6,860.69, the Commissioner included as part of the gross estate of George W. Burkitt, Sr., over $295,000 for property identified as having formed a part of the estate of Mary E. Burkitt, and allowed as a deduction, as property previously taxed, $210,852.17. During his lifetime George W. Burkitt, Sr., collected over $51,539.03 from the assets of the estate of

Mary E. Burkitt, which was invested by him in property which formed a part of his gross estate as determined by the Commissioner.

17. The Commissioner determined the gross estate of George W. Burkitt, Sr., to be $742,886.61, the net estate to be $494,315.35, and the deficiency in tax to be $6,860.69. The executor of the estate appealed, alleging that the Commissioner erred (1) in refusing to permit as deductions those sums which had been collected by George W. Burkitt, Sr., from the property of Mary E. Burkitt and reinvested, and (2) in allowing as a deduction on account of property received from the estate of Mary E. Burkitt only so much as is in excess of the funeral expenses, debts, and expenses of administration of George W. Burkitt, Sr., and his estate. In his answer the Commissioner alleges error in allowing any deduction for property of the estate of Mary E. Burkitt received by decedent, and asks that the deficiency be increased accordingly.

OPINION.

PHILLIPS: Mary E. Burkitt predeceased her husband, George W. Burkitt, Sr., the decedent whose estate is the appellant in this matter, by about a year. Her estate consisted almost wholly of her community interest in the property accumulated by her and her husband, which comprised 54 parcels of real estate, in which they owned the entire title, and 25 parcels, in which they had a joint interest with others, several items of stocks and bonds, and over 500 notes owing from some 123 persons, many of these notes being payable in installments. Under the laws of Texas the wife's community interest in the property passed to her two children. In order to facilitate the management and sale of the real estate and collection of the notes, the husband procured deeds from the two children conveying to him their entire interest in the wife's estate.

About a year after such conveyances were executed George W. Burkitt, Sr., died. His executor was advised by a deputy collector of internal revenue, and later by an internal revenue agent, that the proper manner of making the Federal estate-tax return was to include in the gross estate all the property to which decedent had the legal title, including that of his wife conveyed to .him by his two children, and to claim such property as a deduction, under section 403 (a) (2) of the Revenue Act of 1921, as property which formed a part of the gross estate of a person who died within five years of the death of the decedent. This was done, and the Commissioner, assuming that the property was received by the decedent directly from the wife, allowed as a deduction a portion of the value of the property which had formed the wife's estate. The

executor of the decedent's estate filed this appeal, claiming that a greater deduction should have been allowed.

The Commissioner filed an answer alleging that he was in error in allowing any deduction from the gross estate for property taxed as part of the estate of Mary E. Burkitt, and asking that the deficiency be increased accordingly. The taxpayer filed a reply alleging that no part of the property received by decedent from his children should have been included in the gross estate.

Two questions are presented, viz: (1) Did the property of the wife, received by the decedent from his two children, become his property so as to be a part of his gross estate; and (2) if so, how much of such property has been included in the gross estate of the decedent?

We think there can be no doubt that, in the circumstances shown by the evidence, the beneficial interest in the property of Mary E. Burkitt remained in her children, and that the legal title was vested in the decedent only as a convenient method of managing the property. There were many parcels of real estate on which rents were being collected and timber removed and sold. There were over 500 notes, many of which were payable in installments. Contracts for the sale of property on the installment basis were outstanding. The son was at a sanitarium. Administration on the personal property might easily have been obtained and carried out, but in the sale of the real estate and in the sale of standing timber and conveyances under outstanding contracts of sale the signatures and acknowledgments of the father, son, daughter, and her husband would always have been required. The father was justified when he said in his letter to his son that "to administer on the property would entail an unnecessary expense and a long-drawn-out series of red-tape proceedings."

The letter from the father to the son, inclosing the deed for execution, was the only communication between them with reference to the conveyance which was executed. It asks that the deed be executed, not because the father claims or wishes to claim or to receive any interest in the mother's estate but because it "is meant to avoid unnecessary expense in handling your mother's interest in the property." There was no consideration given. The father was worth at least $350,000 and the son, except for his interest in his mother's estate, about $6,000. Substantially, the same representations were made to the daughter as the reason for the execution of a similar deed by her of her interest in her mother's property. In subsequent conversations the decedent spoke of his half of the property and his children's half. Under such circumstances we believe that the legal title to the property passed to the decedent for the purpose mentioned by him, viz, to administer it, creating a trust, and

that he was at all times subject to account to the children. The decedent died within a year after these conveyances were made and while only a very small part of the whole estate had been collected. These collections were invested by the decedent in the construction of a hotel, a project which he and his wife had started prior to her death. It is our conclusion that the property which has been identified as having been conveyed to the decedent by his children and the proceeds of such part of that property as was sold by him form no part of the gross estate of the decedent.

The record is not entirely clear as to what is the amount by which the gross estate of the decedent has been increased due to the inclusion of such property. The Commissioner's deficiency letter does not state the amount and the pleadings do not help materially. It is clear, however, that property which has been identified as having come to the decedent from the children and which formed a part of the estate of the wife has been included in the gross estate of decedent at a value of over $295,000, and that there has also been included in the gross estate over $51,359.03 collected during his lifetime and invested in the hotel property. The gross estate should be reduced by these amounts, with any necessary corrections to arrive at the correct amounts, and the deficiency, if any, computed accordingly.

*Order of redetermination will be entered on 20 days' notice, under Rule 50.*